UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


RACHEL A. JONES,

         Plaintiff,

v.                                    CIVIL ACTION NO. 2:09-0537

HOME LOAN INVESTMENT, F.S.B.,
f/k/a OCEAN BANK, F.S.B.,
CITIMORTGAGE, INC.,
ADVANCED FINANCIAL SERVICES, INC.,
AND COUNTRYWIDE HOME LOANS SERVICING, LP

         Defendants.


MEMORANDUM OPINION AND ORDER


         Pending are the motions to dimiss by defendants Home

Loan Investment, F.S.B., and Citimortgage, Inc. for failure to

state a claim upon which relief can be granted, filed August 24,

2009, and September 9, 2009, respectively.



I.



         Plaintiff, Rachel A. Jones, is an 81-year-old resident

of Charleston, Kanawha County, West Virginia.  (Am. Compl. ¶ 1).

Defendant Home Loan Investment, F.S.B., ("Home Loan") is a

foreign corporation authorized to do business in West Virginia.[1] (<u>Id.</u> ¶ 7).

Plaintiff and her husband Charles R. Jones owned a home in Charleston with a mortgage through Bank One. (<u>Id.</u> ¶¶ 6-7). Mr. Jones passed away in 2005. (<u>Id.</u> ¶ 7). At the time of his death, plaintiff suffered from severe depression for which she sought treatment and medication. (<u>Id.</u> ¶ 8). Shortly thereafter, plaintiff made her daughter, Queenetta Potts, the attorney-in-fact over her affairs by a Durable Power of Attorney signed and recorded in the Office of the Clerk of Kanawha County on January 31, 2006. (<u>Id.</u> ¶ 9).

To ensure that plaintiff, after the death of her husband, could remain in her home, Queenetta Potts arranged for plaintiff to enter into a Home Equity Conversion Loan Agreement ("reverse mortgage") through the Secretary of Housing and Urban Development ("HUD"). (<u>Id.</u> ¶ 10). Plaintiff and HUD entered into that agreement on February 2, 2006, allowing plaintiff to live in her home without payment until the end of her life. (<u>Id.</u> ¶ 10).

---

[1] Home Loan was formerly known as Ocean Bank, F.S.B. Plaintiff refers to Home Loan as Ocean Bank throughout the amended complaint. For purposes of this opinion, the court will refer to the defendant as Home Loan.

At some time prior to January 2007, defendant Home Loan or one of its agents approached the plaintiff and induced her to refinance her reverse mortgage with a standard 40-year mortgage in the amount of $89,000.00, requiring the plaintiff to make monthly payments of $700.15.  (Id. ¶ 12).  Plaintiff states that she has no recollection of entering into this loan with Home Loan, is unsophisticated in financial affairs, and was unable to conduct her financial affairs at the time.  (Id. ¶¶ 8, 13).  Defendant Home Loan then transferred plaintiff's loan to defendant Citimortgage. (Id. ¶ 14).

At some time prior to April 2007, defendant Advanced Financial Services, Inc. ("Advanced") approached plaintiff and induced her to refinance the mortgage loan she had acquired from Home Loan.  (Id. ¶ 15).  Plaintiff's new mortgage loan with Advanced was for a period of 30 years and in the amount of $97,300.00, increasing plaintiff's payments from $700.15 to $744.13 per month.  (Id.).  Plaintiff states that she has no recollection of entering into the loan agreement with Advanced and that she was unable to conduct her financial affairs at the time.  (Id. ¶ 16).  Advanced transferred plaintiff's mortgage loan to defendant Countrywide Home Loans Servicing, LP ("Countrywide") after April 5, 2007.  (Id. ¶ 19).  Countrywide

3

has since threatened to foreclose on plaintiff's home.  (<u>Id.</u> ¶ 20).

Plaintiff instituted this action against the above-named defendants on April 10, 2009, in the Circuit Court of Kanawha County.  (Notice of Removal ¶ 1).  Plaintiff alleges six counts: (I) negligence of Home Loan, (II) unfair or deceptive acts and practices of Home Loan, (III) negligence of Advanced, (IV) unfair or deceptive acts and practices of Advanced, (V) unconscionable conduct of the defendants, and (VI) assignee liability on the part of Citimortgage and Countrywide.  Plaintiff seeks declarations that the loans were induced by unconscionable conduct and that the current loan agreement is void and unenforceable.  Additionally, plaintiff seeks:  (1) actual damages and a civil penalty of $4,000 for violation of the WVCCPA pursuant to West Virginia Code § 46A-5-101, (2) damages for emotional distress, (3) damages for annoyance and inconvenience, (4) damages for economic loss, (5) punitive damages, and (6) reasonable attorney's fees and costs of this litigation.

Countrywide removed this action on May 13, 2009, based on diversity jurisdiction.  (Notice of Removal 2).  On August 24, 2009, Home Loan moved to dismiss plaintiff's amended complaint for failure to state a claim on which relief can be granted.

4

(Mot. to Dismiss 1).  Home Loan asserts that because it is a
federal savings bank, the Home Owners' Loan Act of 1933, 12
U.S.C.A. §§ 1461 et seq. ("HOLA"), and its accompanying
regulation, 12 C.F.R. § 560.2, preempt all of plaintiff's claims
regarding the origination of her mortgage loan with Home Loan.
(Mot. to Dismiss ¶ 2).  This includes all of plaintiff's claims
against it, being set forth in Counts I, II, and V.  (Mot. to
Dismiss ¶¶ 3-4).  Home Loan further asserts that the two-year
statute of limitations under W. Va. Code § 55-2-12 bars Count I
and that the one-year statute of limitations under W. Va. Code §
46A-5-101 bars Counts II and V.  (Mot. to Dismiss ¶¶ 7-8; Memo.
12-13).  On September 9, 2009, Citimortgage moved to dismiss the
claims asserted against it for failure to state a claim upon
which relief can be granted.  Citimortgage incorporated all the
contentions made in Home Loan's motion to dismiss.

        In her response to Home Loan's motion to dismiss, filed
October 9, 2009, plaintiff contends that her claims are not
preempted because the claims fall within the preemption
exceptions listed in 12 C.F.R. § 560.2(c).  (Resp. to Def.'s Mot.
to Dismiss 4-6).  Plaintiff also asserts that neither of the
above statutes of limitations bars this action against Home Loan
because the discovery rule tolled the running of the statutes for

Counts I, II, and V.  (<u>Id.</u> at 8-9).  Plaintiff's response to

Citimortgage's motion to dismiss, filed October 9, 2009, asserted

that the statute of limitations did not bar plaintiff's claims

and that Citimortgage has assignee liability for each of the

claims made against Home Loan.


II.


A.  Governing Standard


        Rule 8(a)(2) requires plaintiff to provide "a short and

plain statement of the claim showing . . . entitle[ment] to

relief."  Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 551 U.S.

89, 93 (2007).  Rule 12(b)(6) permits a defendant to challenge a

complaint when it "fail[s] to state a claim upon which relief can

be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  The required

"short and plain statement" must provide "'fair notice of what

the . . . claim is and the grounds upon which it rests.'"  <u>Bell</u>

<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting

<u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <u>overruled on other</u>

<u>grounds</u>, <u>Twombly</u>, 550 U.S. at 562-63); <u>see also</u> <u>Anderson v. Sara</u>

<u>Lee Corp.,</u> 508 F.3d 181, 188 (4th Cir. 2007).  The opening

pleading need only contain "[f]actual allegations . . .

6

[sufficient] to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.  Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974; <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).

B.  HOLA Preemption Standards

        Home Loan asserts that HOLA and 12 C.F.R. § 560.2 preempt Counts I, II, and V of Plaintiff's amended complaint. Plaintiff counters that Counts I, II, and V fall within the limited exceptions to preemption within 12 C.F.R. § 560.2(c).

        HOLA empowers the Office of Thrift Supervision ("OTS") "to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations to preempt conflicting state law." <u>In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation</u>, 491 F.3d 638, 642 (7th Cir. 2007); <u>see</u> 12 U.S.C. § 1464.  Under this authority, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2 which is entitled to

7

"no less pre-emptive effect than federal statutes."  **Fidelity**

**Fed. Sav. and Loan Ass'n v. de la Cuesta**, 458 U.S. 141, 153

(1982). The preemption provision created by OTS provides that:

> OTS hereby occupies the entire field of lending
> regulation for federal savings associations. OTS
> intends to give federal savings associations maximum
> flexibility to exercise their lending powers in
> accordance with a uniform federal scheme of regulation.
> Accordingly, federal savings associations may extend
> credit as authorized under federal law, including this
> part, without regard to state laws purporting to
> regulate or otherwise affect their credit activities,
> except to the extent provided in paragraph (c) of this
> section . . ..

12 C.F.R. § 560.2(a).  In section 560.2(b), OTS provided

illustrative examples of the types of state laws preempted.

Among these listed examples, preempted state laws "include,

without limitation, state laws purporting to impose requirements

regarding":

> (4) The terms of credit, including amortization of loans and
> the deferral and capitalization of interest and adjustments
> to the interest rate, balance, payments due, or term to
> maturity of the loan, including the circumstances under
> which a loan may be called due and payable upon the passage
> of time or a specified event external to the loan;
>
> . . .
>
> (9) Disclosure and advertising, including laws
> requiring specific statements, information, or other
> content to be included in credit application forms,
> credit solicitations, billing statements, credit
> contracts, or other credit-related documents and laws
> requiring creditors to supply copies of credit reports to
> borrowers or applicants;

. . .

    **(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;**

. . ..

**12 C.F.R. § 560.2(b)(4), (9), and (10).**

      OTS expressly provided, in section 560.2(c), categories of state laws that "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a). . .."  12 C.F.R. § 560.2(c).  The state laws generally excepted from preemption by HOLA are:

    **(1) Contract and commercial law;**

    **(2) Real property law;**

    **(3) Homestead laws specified in 12 U.S.C. 1462a(f);**

    **(4) Tort law;**

    **(5) Criminal law; and**

    **(6) Any other law that OTS, upon review, finds:**

        **(i)  Furthers a vital state interest; and**

        **(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.**

**Id.**

OTS has explained that the preemption provision in section 560.2(a) is not intended "to preempt basic state laws such as state uniform commercial codes and state laws governing real property, contracts, torts, and crimes." OTS, Lending and Investment, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996). "[T]he purpose of [the exemptions in] paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." Id. OTS outlined the proper analysis for courts to employ when confronted with interpretive questions under section 560.2(a):

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Id. at 50966-67. See also Casey v. F.D.I.C., 583 F.3d 586, 593 (8th Cir. 2009); Silvas v. E*TRADE Mortgage Corp., 514 F.3d 1001, 1005 (9th Cir. 2008).

10

If a court performs the first step of the OTS's
analysis and concludes that the state law bases for plaintiff's
claims fall within section 560.2(b), plaintiff's claims are
preempted by HOLA.  Alternatively, if the court concludes that
the state law claim falls outside of section 560.2(b), it must
then determine whether plaintiff's claims clearly fit within the
confines of permissible state law claims laid out in section
560.2(c).  In order to fit within these confines, the court must
be satisfied that the state law involved has, at most, only an
incidental effect on lending operations.  12 C.F.R. § 560.2(c).

When Congress granted the OTS the expansive authority
to regulate federal savings and loan banks, the OTS created
section 560.2 to provide consistent national regulations and
preempted those state laws that burden federal savings and loan
banks from freely exercising their federally-granted powers.
State Farm Bank v. Reardon, 539 F.3d 336, 344 (6th Cir. 2008);
Flagg v. Yonkers Sav. & Loan Ass'n, FA, 396 F.3d 178, 184 (2d
Cir. 2005).  By excluding from preemption only those laws with an
incidental effect on lending operations, the OTS preempts all
state laws which attempt to regulate in OTS's stead.  Although
our court of appeals has yet to consider the application of
section 560.2(c) to state law claims, the United States Courts of
Appeal for the Eighth and Ninth Circuit have interpreted section

11

560.2 as meaning that any "state law that either on its face or as applied imposes requirements regarding the examples listed in § 560.2(b) is preempted." <u>Casey v. F.D.I.C.</u>, 583 F.3d 586, 595 (8th Cir. 2009); <u>Silvas</u>, 514 F.3d at 1006.  Accordingly, the "as applied" rule exempts from preemption only those generally applicable state laws that fit within the confines of section 560.2(c) without more than incidentally affecting lending.

Whereas the courts of appeal in <u>Casey</u> and <u>Silvas</u> relied on an "as applied" analysis, the United States Court of Appeals for the Seventh Circuit reached a similar conclusion in <u>In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation</u> without expressly employing the "as applied" rule.  491 F.3d 638 (7th Cir. 2007).  In <u>Ocwen</u>, the court engaged in a thorough analysis of what state laws fall within section 560.2(c).  In its determination, the court balanced the OTS's authority over the federal savings and loan banks with the ability of consumers to recover under HOLA's statutory structure in its consideration of whether HOLA preempted the plaintiff's state law claims.  <u>Id.</u> at 643.

While OTS is empowered to regulate federal savings and loan banks, the court of appeals in <u>Ocwen</u> noted that OTS has very limited power to oversee disagreements between the banks and

their customers.  Id. at 643 (citing to "How to Resolve a
Consumer Complaint" 1-2, www.OTS.treas.gov/docs/4/480924.pdf).
Inasmuch as HOLA provides no private right of action to
consumers, consumers have little recourse in disputes with
federal savings banks outside of those generally applicable state
laws exempted from preemption in section 560.2(c).  Id. (citing
Burns Int'l Inc. v. Western Savings & Loan Ass'n, 978 F.2d 533,
535-37 (9th Cir. 1992)).  "Against this background of limited
remedial authority," the court in Ocwen "read subsection (c) to
mean that OTS's assertion of plenary regulatory authority does
not deprive persons harmed by the wrongful acts of savings and
loans associations of their basic state common-law-type
remedies."  Id.  Thus, while HOLA and OTS preempt any attempt at
state regulation of federal savings banks, OTS allows states to
maintain their state-law-based causes of action to protect their
citizens.[2]  Id.

        To provide support for its conclusion, the court quoted
at length from an OTS opinion letter similarly relied upon by the

_____

    [2] The court of appeals provided an example for clarity --
"Suppose an S & L signs a mortgage agreement with a homeowner
that specifies annual interest rate of 6 percent and a year later
bills the homeowner at a rate of 10 percent and when the
homeowner refuses to pay institutes foreclosure proceedings.  It
would be surprising for a federal regulation to forbid the
homeowner's state to give the homeowner a defense based on the
mortgagee's breach of contract."  Ocwen, 491 F.3d at 643-44.

courts in Casey and Silvas.  Id. at 644 (quoting Preemption of
State Laws Applicable to Credit Card Transactions, Op. OTS Chief
Counsel, 1996 WL 767462, ¶ IIC (Dec. 24, 1996)).[3]  In this
letter, OTS's chief counsel addressed whether HOLA preempted
Indiana's generally-applicable state law prohibiting deceptive
acts and practices in the course of commerce.  Op. OTS Chief
Counsel, 1996 WL 767462, ¶ IIC.  Noting OTS's indication that it
does not intend to preempt state laws establishing basic norms
undergirding commercial transactions, the chief counsel
determined that the Indiana state law fell within the traditional
contract and commercial law category properly excluded from
preemption under section 560.2(c).  The impact the law had on
lending appeared to be only incidental to the primary purpose of
the statute and there was no indication that the law was in
conflict with the purpose of HOLA's preemption provision or OTS's
regulation of federal savings associations.  Id.  Thus, the chief
counsel found that the Indiana deceptive acts and practices law
was not preempted by federal law.  Id.

        Based on its analysis of HOLA and the OTS's position as
stated in the chief counsel's letter, the court in Ocwen ruled

---

[3] OTS issued this opinion on December 24, 1996, three months
after it issued the explanation of 12 C.F.R. § 560.2 on September
30, 1996.

14

that section 560.2(c) preserves those state laws of general applicability only incidentally affecting the banking and lending activities of a federal savings association. Ocwen, 491 F.3d at 644-45 ; see also State Farm Bank v. Reardon, 539 F.3d 336, 344 (6th Cir. 2008). In accordance with the chief counsel's letter, Ocwen evaluated each of the plaintiff's claims to determine whether the state law imposed impermissible regulatory requirements upon federal savings and loan banks or complemented the overall purposes of the federal regulatory scheme with only incidental effect upon lending. Ocwen, 491 F.3d at 644-49.

While not expressly adopting the "as applied" rule as the courts did in Casey and Silvas, the approach taken in Ocwen parallels that in Casey and Silvas. Finding several generally applicable state statutes preempted by section 560.2(a) because they fell within the section 560.2(b) illustrative examples, the court clarified that "[n]ot all state statutes that might be invoked against a federal [savings and loan banks] are preempted, any more than all common law doctrines are." Ocwen, 491 F.3d at 646. While Ocwen concluded that traditional common law actions of fraud, breach of contract, defamation and slander of title generally avoid preemption under HOLA, preemption depends on the particular nature of the claims as alleged by the plaintiff. 491 F.3d at 646 ("The twentieth [claim] alleges fraud, and does not

15

appear to be preempted, though this could depend on the nature of the fraud, which is unexplained.").[4]

Evaluating the particularized allegations of common law claims functions much like the "as applied" rule and will often reach the same result.  Indeed, the court in Casey rejected plaintiffs's argument that Ocwen was at odds with the "as applied" rule adopted by the court in Casey.  583 F.3d at 595 n. 3.  In Casey, Silvas, and Ocwen, the courts considered the specific nature of each state law claim to determine whether an allegation is a state-based cause of action or an attempt at regulation preempted by section 560.2(b).  See also Watkins v. Wells Fargo Home Mortg., 631 F. Supp. 2d 776, 782 (S.D. W. Va. 2008)("Whatever the claim, a court must look at the underlying allegations proffered in support of the claim and ask on which side of the Ocwen court's ledger they fall.").  Accordingly, each of plaintiff's allegations must be considered individually in order to determine whether the state law claim is preempted by section 560.2.

---

[4]  The court in Ocwen summarized its conclusions as follows: "[s]ome of the charges are pretty clearly, even certainly, preempted, as we have tried to indicate.  Others probably are not, though this may depend on particulars omitted from the complaint.  Many of the charges are so vaguely worded that we cannot guess whether they are preempted or not."  491 F.3d at 648.

III.

A.  Count I - Negligence of Home Loan

Plaintiff alleges that Home Loan (1) falsely and negligently misrepresented to plaintiff that she would benefit by entering into the mortgage loan with it, (2) negligently ignored plaintiff's grant of a publicly recorded power of attorney, and (3) negligently failed to determine whether plaintiff could afford the mortgage loan.  (Am. Compl. ¶¶ 26, 31, 32).

Regarding plaintiff's first claim of negligent and false misrepresentation, plaintiff alleges that Home Loan and its agents misrepresented to her that she would benefit by entering into the loan.  (Am. Compl. ¶ 26).  As a result, plaintiff claims she was induced by and relied upon such false and negligent misrepresentations and received no benefit from the Home Loan mortgage loan.  (Id. at ¶¶ 27, 29).  However, plaintiff states that she does not remember the transaction, and she has pled no facts indicating how Home Loan negligently or falsely represented that she would benefit from this loan.  Plaintiff has thus failed to provide "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Accordingly, plaintiff's first claim, consisting of

17

negligent and false misrepresentation, is dismissed without prejudice.[5]

Plaintiff's second negligence claim alleges that Home Loan "was further negligent by ignoring the Power of Attorney on public record and failing to make reasonable inquiry regarding the necessity for the same or Plaintiff's ability to make financial decisions." (Am. Compl. ¶ 31). Plaintiff contends that her second negligence claim is not an attempt to require federal savings and loan banks to conduct title examinations prior to lending. While plaintiff does not allege that Home Loan actually became aware of the power of attorney on the record, she asserts that defendants were negligent by failing to inquire further upon the presumed discovery of the durable power of attorney during the examination ordinarily conducted prior to lending. (Pl.'s Resp. at 8). However, such a duty would place a significant burden upon federal savings and loan banks during the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). Once a lender became aware of a power of attorney

_____

[5] Not only does plaintiff fail to provide sufficient factual allegations to survive Home Loan's motion to dismiss, her claim does not contain enough factual allegations for the court to determine the relevance of her claim to the preemption provisions under section 560.2.

on the record, plaintiff's claims would impose a duty to inquire into the nature of the power of attorney, its justifications, and the current status of the principal.[6]  This is a significant undertaking that more than incidentally affects lending. Inasmuch as the OTS has the sole authority to impose such a burden upon federal savings banks, plaintiff's second negligence claim in Count I is preempted by section 560.2(b)(10).

    Plaintiff's final claim of negligence under Count I alleges that Home Loan was "negligent by failing to determine whether Plaintiff could afford the mortgage loan." (Am. Compl. ¶ 31).  Plaintiff contends, in essence, that defendants did not properly qualify her for the loan she was given as evidenced by her inability to pay it off.  Determinations of a home buyer's ability to afford a loan and their overall qualifications for the

_____

    [6] Additionally, even if this claim were not preempted by HOLA, it is unclear whether defendants have a duty to inquire further upon discovering a durable power of attorney.  A recorded power of attorney does not indicate that the grantor is incapable of acting on her own behalf.  A power of attorney grants someone the authority to act as an agent or attorney-in-fact for the grantor.  Black's Law Dictionary 1290 (9th ed. 2009).  A durable power of attorney remains in effect in the event of the grantor's incompetency.  Id.  Plaintiff granted Ms. Potts a durable power of attorney, which merely allows Ms. Potts to take certain actions as an agent on plaintiff's behalf in addition to those actions taken by plaintiff.  Ms. Potts was not appointed as her conservator or guardian.  See W. Va. Code § 44A-1-4.  Without a conservatorship or guardianship on the record, there is insufficient inquiry notice to warrant a well-founded belief that she is unable to act on her own behalf.

loan directly implicate the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" by federal savings banks.  12 C.F.R. § 560.2(b)(10); see Garcia v. Wachovia Mortg. Corp., 2009 WL 3837621 at *13 (C.D. Cal. Oct. 14, 2009)("To the extent Plaintiff makes claims relating to inability to qualify for the loan she was given, these are preempted by 12 C.F.R. § 560.2(b)(10)."). In order to quantify an applicant's ability to "afford" a loan, lenders would necessarily be forced to engage in comprehensive calculations of the income and expenditures of mortgage applicants which more than incidentally affects lending.  The OTS has the sole authority to set prerequisites for federal savings and loan banks participation in and origination of mortgages. Accordingly, plaintiff's third negligence claim is impermissibly regulatory in nature, and preempted by section 560.2(b)(10).

**B. Count II - Unfair or Deceptive Acts and Practices of Home Loan**

Plaintiff alleges in Count II that Home Loan committed unfair and deceptive acts upon plaintiff in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). Specifically, plaintiff alleges Home Loan violated the WVCCPA "by representing their services have characteristics or benefits that

they do not have in violation of W. Va. Code § 46A-6-104 and 46A-6-102(7)(E)" and "by engaging in conduct which created the likelihood of confusion or misunderstanding in violation of W. Va. Code [§§] 46A-6-104 and 46A-6-102(7)(L)."  (Am. Compl. ¶¶ 36-37).  West Virginia law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  W. Va. Code § 46A-6-104.

> (7) "Unfair methods of competition and unfair or deceptive acts or practices" means and includes, but is not limited to, any one or more of the following:
>
> . . .
>
> > (E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . .;
>
> > . . .
>
> > (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;
>
> > . . ..

W. Va. Code §§ 46A-6-102(7)(E) and (7)(L).

Based on the limited facts provided by plaintiff, it appears that she bases her unfair or deceptive acts claims on Home Loan's alleged misrepresentation of the benefit of the loan for plaintiff.  However, as with plaintiff's first claim of

21

negligent misrepresentation, plaintiff has not pled "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Plaintiff states that she does not remember any of the transactions regarding the formation of the loan and has pled no facts within the amended complaint with which to support these allegations. As with plaintiff's first negligence claim, the lack of factual allegations limit the court's ability to determine the precise nature of plaintiff's claim. Additional factual allegations are necessary to determine whether the plaintiff is making an impermissible attempt at regulating the actions of federal savings banks or simply seeking remedy through state-law claims allowed under section 560.2(c). Without more factual pleadings, plaintiff's claims in Count II are insufficient to survive Home Loan's motion to dismiss. Accordingly, Count II is dismissed with prejudice.


C.  Count V - Unconscionable Conduct


        Plaintiff alleges in Count V that Home Loan engaged in unconscionable conduct by (1) failing to determine if the Plaintiff could afford these loans, (2) placing an elderly person into a loan that she could not pay off within her lifetime, and

(3) placing a person in a loan from which that person would
receive no benefit in violation of W. Va. Code § 46A-2-121(1)(a),
reading as follows:

> (1) With respect to a transaction which is or gives
> rise to a consumer credit sale, consumer lease or
> consumer loan, if the court as a matter of law finds:
>
> (a) The agreement or transaction to have been
> unconscionable at the time it was made, or to have been
> induced by unconscionable conduct, the court may refuse
> to enforce the agreement . . . .

W. Va. Code § 46A-2-121(1)(a).

        Plaintiff's allegations of Home Loan's unconscionable
inducement into the mortgage create impermissible regulatory
requirements under HOLA.  The OTS has exclusive authority to
impose requirements relating to the "[p]rocessing, origination,
servicing, sale or purchase of, or investment or participation
in, mortgages" under section 560.2(b)(10).  Plaintiff's claims
would require federal savings banks to make determinations of
whether borrowers can afford the loan, whether borrowers will
live long enough to repay the loan, and whether the borrowers
will benefit from the loan.  Only the OTS can compel federal
savings banks to engage in complex assessments of borrowers'
financial means, life expectancy, and benefits received from the
loan in order to qualify for a mortgage.  See Garcia, 2009 WL
3837621 at *13 ("To the extent Plaintiff makes claims relating to

23

inability to qualify for the loan she was given, these are preempted by 12 C.F.R. § 560.2(b)(10).").  Any attempt to impose similar requirements through state law is preempted by HOLA. Accordingly, plaintiff's claims of unconscionable conduct in Count V are dismissed with prejudice.

D.  Statutes of Limitations

Home Loan asserts that Count I of the amended complaint is barred by W. Va. Code § 55-2-12's two-year statute of limitations, while Counts II and V are barred by the one-year period in W. Va. Code § 46A-5-101.  Plaintiff counters that the discovery rule tolled the statute of limitations for her claims so that her claims are not barred.[7]

West Virginia's discovery rule is "generally applicable to all torts, unless there is a clear statutory prohibition to its application."  Dunn v. Rockwell, 2009 WL 4059061 at *8 (W.

_____

[7] There is a discrepancy between plaintiff's amended complaint and her response to the defendants' motions to dismiss. In plaintiff's amended complaint at paragraph 23, she states that her injuries were discovered in late 2007.  However, in plaintiff's response to Home Loan's motion on page 9, she states that the injuries were discovered when "Plaintiff's daughter inquired into her mother's financial situation" in late 2008.  In resolving the statute of limitations issues raised by the motions to dismiss, the allegations of the amended complaint are controlling.

24

Va. 2009) (emphasis added).

> [U]nder the discovery rule the statute of limitations
> begins to run when the plaintiff knows, or by the
> exercise of reasonable diligence, should know (1) that
> the plaintiff has been injured, (2) the identity of the
> entity who owed the plaintiff a duty to act with due
> care, and who may have engaged in conduct that breached
> that duty, and (3) that the conduct of that entity has
> a causal relation to the injury.

Id. (quoting Syllabus Point 4, Gaither v. City Hosp., Inc., 487

S.E.2d 901 (1997)).

The test to determine whether a plaintiff has

discovered the cause of action is an objective one.  Id. at 9.

"This objective test focuses upon whether a reasonable prudent

person would have known, or by the exercise of reasonable

diligence should have known, of the elements of a possible cause

of action."  Id.  The West Virginia Supreme Court of Appeals has

provided a five-step analysis to determine whether a cause of

action is statutorily barred by the passage of time:

> First, the court should identify the applicable statute
> of limitation for each cause of action. Second, the
> court (or, if material questions of fact exist, the
> jury) should identify when the requisite elements of
> the cause of action occurred. Third, the discovery rule
> should be applied to determine when the statute of
> limitation began to run by determining when the
> plaintiff knew, or by the exercise of reasonable
> diligence should have known, of the elements of a
> possible cause of action, as set forth in Syllabus
> Point 4 of Gaither v. City Hosp., Inc., supra. Fourth,
> if the plaintiff is not entitled to the benefit of the
> discovery rule, then determine whether the defendant
> fraudulently concealed facts that prevented the

plaintiff from discovering or pursuing the cause of
action. Whenever a plaintiff is able to show that the
defendant fraudulently concealed facts which prevented
the plaintiff from discovering or pursuing the
potential cause of action, the statute of limitation is
tolled. And fifth, the court or the jury should
determine if the statute of limitation period was
arrested by some other tolling doctrine.  Only the
first step is purely a question of law; the resolution
of steps two through five will generally involve
questions of material fact that will need to be
resolved by the trier of fact.

Id.


        Regarding steps two through five of the above test,
"the trial court is required to analyze mixed questions of law
and fact . . . in order to determine 'whether there is ... [a]
genuine issue of fact to be tried and inquiry concerning the
facts is ... desirable to clarify the application of the law.'"
Id. (quoting Syll. Pt. 3, Aetna Cas. & Sur. Co. v. Federal Ins.
Co. of N.Y., 133 S.E.2d 770 (1963)).


        1.   Count I - Negligence of Home Loan.


        Negligence is a tort claim as to which the discovery
rule may apply to toll the statute of limitations.  Plaintiff's
amended complaint alleges that Home Loan's negligent conduct was
discovered in late 2007.  (Am. Comp. ¶ 23) and she filed her
complaint on April 10, 2009.  Id.  Inasmuch as plaintiff's

26

negligence claim is subject to the two-year statute of
limitations within W. Va. Code § 55-2-12, plaintiff has pled
sufficient facts to assert that she complied with the two-year
statute of limitations as tolled by the discovery rule.
Accordingly, Home Loan's motion to dismiss the entirety of
plaintiff's claims within Count I based on the statute of
limitations is denied.

### 2. Count II - Unfair or Deceptive Acts and Practices of Home Loan

As discussed above, plaintiff provided insufficient
factual allegations to support her unfair or deceptive acts claim
against Home Loan under the WVCCPA.  W. Va. Code § 46A-1-101 et
seq.  Accordingly, the court dismissed Count II with prejudice
for failure to state a claim upon which relief can be granted.
Nevertheless, the court will perform the statute of limitations
analysis for Count II.

In Count II, plaintiff alleges that Home Loan committed
unfair and deceptive acts and practices upon her by
misrepresenting the characteristics and benefits of Home Loan's
services and by engaging in conduct which created a likelihood of
confusion or misunderstanding in violation of the WVCCPA.  (Am.

Compl. ¶¶ 36-37).  The WVCCPA contains a one-year statute of limitations for nonrevolving consumer loans.  <u>See</u> W. Va. Code § 46A-5-101(1).[8]  Home Loan argues that the discovery rule does not apply to Count II because it is statutory in nature, but Home Loan provides no authority in support of this argument.  (Reply 13).  Plaintiff responds that the discovery rule applies to a tort or fraud claim and that Count II is based in tort. (Resp. 6).

Plaintiff's acknowledgment that her claims in Count II are considered tort claims governs the resolution of the statute of limitations issue.  The facts as pled within plaintiff's amended complaint indicate that the statute of limitations has run on her WVCCPA claims regardless of whether the discovery rule applies.  The amended complaint states that plaintiff's injuries were discovered in late 2007.  Thus, even applying the discovery rule, the WVCCPA's one-year statute of limitations from the time of discovering her injuries has expired.  Count II is dismissed with prejudice.

---

[8] The WVCCPA creates a four-year statute of limitations for claims involving consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts while all other consumer credit sales and consumer loans are subject to a one-year statute of limitations.

### 3. Count V - Unconscionable Conduct

The court dismissed Count V of plaintiff's amended complaint with prejudice inasmuch as HOLA and 12 C.F.R. § 560.2(b) preempt the entire Count. However, as it did for Count II, the court will perform the statute of limitations analysis for Count V.

Plaintiff alleges in Count V that Home Loan engaged in unconscionable conduct by (1) failing to determine if the plaintiff could afford these loans, (2) placing an elderly person into a loan that she could not pay off within her lifetime, and (3) placing a person in a loan from which she would receive no benefit in violation of the WVCCPA, specifically W. Va. Code § 46A-2-121(a). (Comp. ¶ 53-54). Home Loan argues that Count V of plaintiff's amended complaint is barred by W. Va. Code 46A-5-101(1)'s one year statute of limitations. In response, plaintiff contends the discovery rule tolled the running of the statute of limitations. Assuming <u>arguendo</u> that the discovery rule applies to plaintiff's claims in Count V, plaintiff's daughter did not discover Home Loan's alleged actions until late 2007. (Am. Compl. ¶ 23). Inasmuch as plaintiff filed her complaint April 10, 2009, over a year after the discovery of Home Loan's alleged actions, W. Va. Code 46A-5-101(1)'s one year statute of

limitations bars this claim.  Count V is dismissed with prejudice.

IV.

Plaintiff asserts in Count VI of her amended complaint that Citimortgage, as Home Loan's assignee of plaintiff's loan, is liable for actions of Home Loan under Counts I, II, and V of plaintiff's amended complaint.  CitiMortgage asserted that plaintiff's claims were barred by HOLA preemption and applicable statutes of limitation, incorporating those arguments made in Home Loan's motion to dismiss.  To the extent plaintiff's claims have been dismissed against Home Loan, the claims are consequently dismissed as against Home Loan's assignee, Citimortgage.  Accordingly, the first negligence claim in Count I is dismissed without prejudice as to Citimortgage, and the second and third claims in Count I as well as the entirety of Counts II and V are dismissed with prejudice as to Citimortgage.[9]

_____

[9] Plaintiff's interpretation of assignee liability may be contradicted by W. Va. Code § 46A-2-102(3), which indicates assignee liability serves primarily as a defensive measure for consumers with limited exceptions otherwise.

V.

Based on the foregoing analysis, the Court it is ORDERED as follows:

1) plaintiff's first allegation of negligence under Count I be, and hereby is, dismissed without prejudice;

2) plaintiff's second and third allegations of negligence under Count I be, and hereby are, dismissed as preempted with prejudice;

3) Count II be, and hereby is, dismissed with prejudice;

4) Count V be, and hereby is, dismissed with prejudice;

5) plaintiff's first allegation of negligence under Count I and incorporated as to Citimortgage through Count VI be, and hereby is, dismissed without prejudice as to Citimortgage;

6) plaintiff's second and third allegations of negligence under Count I and incorporated as to Citimortgage through Count VI be, and hereby are, dismissed with prejudice as to Citimortgage;

7) Count II as incorporated through Count VI as to Citimortgage be, and hereby is, dismissed with prejudice; and

31

8) Count V as incorporated through Count VI as to

   Citimortgage be, and hereby is, dismissed with prejudice.


   The Clerk is directed to forward copies of this written

opinion and order to all counsel of record and any unrepresented

parties.

DATED:  March 22, 2010

John T. Copenhaver, Jr.
United States District Judge

32