```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**RACHEL A. JONES,**

    Plaintiff,

v.                                CIVIL ACTION NO. 2:09-00537

**ADVANCED FINANCIAL SERVICES, INC.,**
**and COUNTRYWIDE HOME LOANS SERVICING, LP**

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the motion of Advanced Financial Services, Inc. ("Advanced"), for judgment on the pleadings, filed May 13, 2010, and joined by Countrywide Home Loans Servicing, LP ("Countrywide"), on July 27, 2010.[1]

### I. Background and Procedural History

Plaintiff, Rachel A. Jones, is an 81-year-old resident of Charleston, Kanawha County, West Virginia. (Am. Compl. ¶ 1). Advanced is a foreign corporation authorized to do business in

---

[1] The May 13 motion by Advanced for judgment on the pleadings corrected an earlier motion, filed May 11, 2010, by removing defendants Home Loan Investment Bank, F.S.B., and Citimortgage, Inc., from the case heading.

1

West Virginia.[2]  (Id. ¶ 4).

Plaintiff and her husband Charles R. Jones owned a home in Charleston with a mortgage through Bank One. (Id. ¶¶ 6-7). Mr. Jones passed away in 2005. (Id. ¶ 7). At the time of her husband's death, plaintiff suffered from severe depression for which she sought treatment and medication. (Id. ¶ 8). Shortly thereafter, plaintiff made her daughter, Queenetta Potts, the attorney-in-fact over her affairs by a Durable Power of Attorney signed and recorded in the Office of the Clerk of Kanawha County on January 31, 2006. (Id. ¶ 9).

To ensure that plaintiff, after the death of her husband, could remain in her home, Queenetta Potts arranged for plaintiff to enter into a Home Equity Conversion Loan Agreement ("reverse mortgage") through the Secretary of Housing and Urban Development ("HUD"). (Id. ¶ 10). Plaintiff and HUD entered into that agreement on February 2, 2006, allowing plaintiff to live in her home without payment until the end of her life. (Id. ¶ 10).

At some time prior to January 2007, Home Loan

---

[2] Part I of this order is largely taken from Part I of the court's order of March 22, 2010, granting the motions to dismiss of defendants Home Loan Investment, F.S.B., and Citimortgage, Inc.

2

Investment, F.S.B. ("Home Loan"), or one of its agents approached plaintiff and induced her to refinance her reverse mortgage with a standard, 40-year mortgage in the amount of $89,000.00, requiring the plaintiff to make monthly payments of $700.15. (Id. ¶ 12). Plaintiff states that she has no recollection of entering into this loan with Home Loan, is unsophisticated in financial affairs, and was unable to conduct her financial affairs at the time. (Id. ¶¶ 8, 13). Home Loan then transferred plaintiff's loan to Citimortgage, Inc. ("Citimortgage"). (Id. ¶ 14).

At some time prior to April 2007, Advanced approached plaintiff and induced her to refinance the mortgage loan she had acquired from Home Loan. (Id. ¶ 15). Plaintiff's new mortgage loan with Advanced was for a period of 30 years and in the amount of $97,300.00, increasing plaintiff's monthly payment from $700.15 to $744.13. (Id.). Plaintiff states that she has no recollection of entering into the loan agreement with Advanced and that she was unable to conduct her financial affairs at the time. (Id. ¶ 16). Advanced transferred plaintiff's mortgage loan to Countrywide after April 5, 2007. (Id. ¶ 19). Countrywide has since threatened to foreclose on plaintiff's home. (Id. ¶ 20).

Plaintiff instituted this action on April 10, 2009, in the Circuit Court of Kanawha County. (Notice of Removal ¶ 1). In her amended complaint, plaintiff alleges a total of six counts, four of which are pertinent here: Count III, negligence of Advanced; Count IV, unfair or deceptive acts and practices of Advanced; Count V, unconscionable conduct of each of the defendants; and Count VI, assignee liability on the part of Countrywide. Plaintiff seeks declarations that the loans were induced by unconscionable conduct and that the current loan agreement is void and unenforceable. Additionally, plaintiff seeks: (1) actual damages and a civil penalty of $4,000 for violation of the West Virginia Consumer Credit and Protection Act pursuant to West Virginia Code § 46A-5-101, (2) damages for emotional distress, (3) damages for annoyance and inconvenience, (4) damages for economic loss, (5) punitive damages, and (6) reasonable attorney's fees and costs of this litigation.

Countrywide removed this action on May 13, 2009, based on diversity jurisdiction. (Notice of Removal 2). On August 24, 2009, Home Loan and Citimortgage moved to dismiss plaintiff's amended complaint for failure to state a claim on which relief can be granted. (Mot. to Dismiss 1). By order entered March 22, 2010, the court dismissed plaintiff's claims against Home Loan

and Citimortgage. On May 13 2010, Advanced moved for judgment on the pleadings as to plaintiff's claims in Counts III, IV, and V. On July 27, 2010, Countrywide moved for judgment on the pleadings, incorporating all of the contentions asserted in Advanced's motion for judgment on the pleadings.

### III. Governing Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion "is assessed under the same standard that applies to a Rule 12(b)(6) motion." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009); Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

Rule 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). The required "short and plain statement" must provide

"'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S. Ct. at 1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." Twombly, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

As noted in Iqbal, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a district court to "'accept as true all of the factual allegations contained in the complaint . . . .'"  Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

III.  Analysis

A.  Count III - Negligence of Advanced

In Count III, plaintiff alleges that Advanced (1) falsely and negligently misrepresented to plaintiff that she would benefit by entering into the mortgage loan with it, (2) negligently ignored plaintiff's grant of a publicly recorded power of attorney, and (3) negligently failed to determine whether plaintiff could afford the mortgage loan.[3]  (Am. Compl. ¶¶ 40, 45, 46).

Regarding plaintiff's first claim under Count III of negligent and false misrepresentation, plaintiff alleges that Advanced and its agents misrepresented to her that she would benefit by entering into the loan.  (Am. Compl. ¶ 40).  As a result, plaintiff claims that she was induced by and relied upon such false and negligent misrepresentations and received no substantial benefit from the Advanced mortgage loan.  (Id. at ¶¶

---

[3] Plaintiff asserted identical negligence claims against Home Loan in Count I of her amended complaint.  (Am. Compl. ¶¶ 26, 31, 32).  By order entered March 22, 2010, the court dismissed Count I, concluding that plaintiff had failed to state a claim upon which relief could be granted.  Inasmuch as plaintiff's claims against Advanced are identical to those asserted in Count I, the court's analysis in this instance will be similar to that of the March 22 order.

41, 42). However, plaintiff states that she does not remember the transaction, and she has pled no facts indicating how Advanced negligently or falsely represented that she would benefit from this loan. Plaintiff has thus failed to provide "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Accordingly, plaintiff's first claim, consisting of negligent and false misrepresentation, is dismissed without prejudice.

Plaintiff's second negligence claim under Count III alleges that Advanced "was further negligent by ignoring the Power of Attorney on public record and failing to make reasonable inquiry regarding the necessity for the same or Plaintiff's ability to make financial decisions." (Am. Compl. ¶ 45). A recorded power of attorney, however, does not indicate that the grantor is incapable of acting on her own behalf. Rather, a power of attorney merely grants an individual the authority to act as an agent or attorney-in-fact for the grantor. Black's Law Dictionary 1290 (9th ed. 2009). In other words, the power of attorney creates an agency relationship between the grantor and grantee. Vance v. Vance, 451 S.E.2d 422, 424 (W. Va. 1994). A durable power of attorney remains in effect in the event of the grantor's incompetency, allowing the grantee to continue to act

8

as the grantor's agent.  Id.  Plaintiff granted Ms. Potts a durable power of attorney, which merely allows Ms. Potts to take certain actions as an agent on plaintiff's behalf in addition to those actions taken by plaintiff herself.  Ms. Potts was not appointed as plaintiff's conservator or guardian.  See W. Va. Code § 44A-1-4.  Without a conservatorship or guardianship on the record, there is insufficient inquiry notice to warrant a well-founded belief that plaintiff is unable to act on her own behalf.  Accordingly, plaintiff's second negligence claim is dismissed without prejudice.

Plaintiff's final claim of negligence under Count III alleges that Advanced was "negligent by failing to determine whether Plaintiff could afford the mortgage loan."  (Am. Compl. ¶ 31).  Plaintiff contends, in essence, that Advanced did not properly qualify her for the loan she was given as evidenced by her inability to pay it off.  Once again, however, plaintiff has failed to provide sufficient factual allegations to raise a right to relief above the speculative level.  See Twombly, 550 U.S. at 555.  As an initial matter, plaintiff has neglected to allege facts that could give rise to a duty of care owed by Advanced.  See Parsley v. GMAC, 167 W. Va. 866, 870, 280 S.E.2d 703, 706 (1981) ("It is axiomatic that in order to establish a prima facie

case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff.  No action for negligence will lie without a duty broken.").  Moreover, inasmuch as she has pled no facts indicating the steps Advanced did and did not take in assessing the affordability of the loan, plaintiff has failed to allege that Advanced breached any duty owed to her.  The mere fact that plaintiff ultimately defaulted on the loan is, standing alone, insufficient to demonstrate that Advanced was negligent in failing to determine whether plaintiff could afford the loan at the time of approval.  Accordingly, plaintiff's third negligence claim is dismissed without prejudice.

B. Count IV - Unfair or Deceptive Acts and Practices of Advanced

Plaintiff alleges in Count IV that Advanced committed unfair and deceptive acts upon plaintiff in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA").[4] Specifically, plaintiff alleges Advanced violated the WVCCPA "by

---

[4] Plaintiff asserted identical claims against Home Loan in Count II of her amended complaint.  (Am. Compl. ¶¶ 36-37).  By order entered March 22, 2010, the court dismissed Count II, concluding that plaintiff had failed to state a claim upon which relief could be granted.  Inasmuch as plaintiff's claims against Advanced are identical to those asserted in Count II, the court's analysis in this instance will be similar to that of the March 22 order.

representing their services have characteristics or benefits that they do not have in violation of W. Va. Code § 46A-6-104 and 46A-6-102(7)(E)" and "by engaging in conduct which creates the likelihood of confusion or misunderstanding in violation of W. Va. Code [§§] 46A-6-104 and 46A-6-102(7)(L)." (Am. Compl. ¶¶ 50, 51). West Virginia law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104. The WVCCPA defines "unfair methods of competition and unfair or deceptive acts or practices" as follows:

> (7) "Unfair methods of competition and unfair or deceptive acts or practices" means and includes, but is not limited to, any one or more of the following:
>
> . . .
>
>> (E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . .;
>>
>> . . .
>>
>> (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;
>>
>> . . ..

W. Va. Code §§ 46A-6-102(7)(E) and (7)(L).

Based on the limited facts provided by plaintiff, it appears that she bases her unfair or deceptive acts claims on

11

Advanced's alleged misrepresentation of the benefit of the loan for plaintiff. However, as with plaintiff's first claim of negligent misrepresentation, plaintiff has not pled "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Plaintiff states that she does not remember any of the transactions regarding the formation of the loan and has pled no facts within the amended complaint with which to support these allegations. Without more specific factual pleadings, plaintiff's claims in Count IV are insufficient to survive Advanced's motion for judgment on the pleadings. Accordingly, Count IV is dismissed with prejudice.

C.  Count V - Unconscionable Conduct

Plaintiff alleges in Count V that Advanced engaged in unconscionable conduct by (1) failing to determine if she could afford the loan, (2) placing an elderly person into a loan that she could not pay off within her lifetime, and (3) placing a person in a loan from which that person would receive no benefit. (Am. Compl. ¶¶ 53(a)-(c)). Plaintiff contends that the defendants' conduct in this regard constitutes a violation of West Virginia Code § 46A-2-121(1)(a), reading as follows:

(1) With respect to a transaction which is or gives

>rise to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds:
>
>>(a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement . . ..

W. Va. Code § 46A-2-121(1)(a).

The principle of unconscionability is "one of the prevention of oppression and unfair surprise and not the disturbance of reasonable allocation of risks or reasonable advantage because of superior bargaining power or position." Orlando v. Finance One W. Va., Inc., 179 W. Va. 447, 369 S.E.2d 882, 885 (1988). In determining whether conduct is unconscionable, the court must consider

>whether, in the light of the background and setting of the market, the needs of the particular trade or case, and the condition of the particular parties to the conduct or contract, the conduct involved is, or the contract or clauses involved are so one sided as to be unconscionable under the circumstances existing at the time the conduct occurs or is threatened or at the time of the making of the contract.

Arnold v. United Cos. Lending Corp., 204 W. Va. 229, 511 S.E.2d 854, 860 (1998)(quoting Uniform Consumer Credit Code, § 5.108 comment 3, 7A U.L.A. 170 (1974)). An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole. Troy Mining Corp.

v. Itmann Coal Co., 176 W. Va. 599, 346 S.E.2d 749, 753 (1986).

A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, and the existence of meaningful alternatives available to the plaintiff.  Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co., 186 W. Va. 613, 413 S.E.2d 670, 675 (1991).  A bargain may be unconscionable if there is "gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party."  Troy Mining, 346 S.E.2d at 753.  Gross inadequacy in bargaining power may exist where the parties involved in the transaction include a national corporate lender on one side and an unsophisticated, uneducated consumer on the other.  Arnold, 511 S.E.2d at 861.

Notably, "[u]nconscionability claims should but rarely be determined based on the pleadings alone."  Mallory v. Mortgage Am., Inc., 67 F. Supp. 2d 601, 612 (S.D. W. Va. 1999) (citing Carlson v. General Motors Corp., 883 F.2d 287, 292 (4th Cir. 1989)).  When it is claimed that a contract or any clause thereof may be unconscionable, "the parties should be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."  Id.  Otherwise, a court is left to speculate as

to whether a particular contract is unconscionable.  Id.

Against this backdrop, the court is constrained to conclude that plaintiff has alleged facts sufficient to show that her unconscionable conduct claim is plausible on its face.  See Twombly, 127 S. Ct. at 1974.  To begin with, plaintiff has raised sufficient factual allegations to demonstrate a gross inadequacy of bargaining power.  Although plaintiff claims that she has no recollection of agreeing to the Advanced loan, she alleges that she is an elderly borrower, unsophisticated in financial matters.  (Am. Compl. ¶¶ 1, 8).  Inasmuch as Advanced is a national lending institution, the amended complaint sufficiently raises a question as to the parties' relative bargaining positions.  See Arnold, 511 S.E.2d at 861 (observing that parties' relative bargaining positions were "grossly unequal" in matter between "a national corporate lender on one side and elderly, unsophisticated consumers on the other").  Moreover, plaintiff's claim that her bargaining position was inadequate when compared to that of Advanced is further supported by her allegation that Advanced actively solicited her in 2007, when she was 80 years of age and unable to conduct her financial affairs.  See id. (finding contract unconscionable in part because "the record does not indicate that the [plaintiffs] were seeking a loan, but rather

15

were solicited by [the defendant lender]").

The amended complaint also contains factual allegations sufficient to demonstrate that the terms of plaintiff's loan agreement unreasonably favored Advanced.  For example, although plaintiff acknowledges that the Advanced loan was subject to a lower interest rate and a shorter amortization period than her prior mortgage loan, she alleges that the principal balance on the Adavanced loan was more than $8,000.00 higher than that of her prior loan, notwithstanding the fact that the prior loan had been made only three months earlier.  (Am. Compl. ¶¶ 11-16).  Similarly, plaintiff alleges that the Advanced loan both increased her monthly mortgage payment and resulted in significant fees, even though she was having difficulties affording her existing mortgage payments.  (Id. ¶ 15-16, 43).

Plaintiff has thus raised sufficient factual allegations to show that her unconscionable conduct claim is plausible on its face.  Accordingly, to the extent it seeks dismissal of Count V, Advanced's motion for judgment on the pleadings is denied.

D.  Count VI - Assignee Liability

Plaintiff asserts in Count VI of her amended complaint

16

that Countrywide, as Advanced's assignee of plaintiff's loan, is liable for the actions of Advanced under Counts III, IV, and V of plaintiff's amended complaint.  In addition to incorporating those contentions made in Advanced's motion for judgment on the pleadings, Countrywide maintains that it cannot be liable inasmuch as it did not participate in the origination or closing of plaintiff's loan.

To the extent plaintiff's claims have been dismissed against Advanced, the claims are consequently dismissed as against Advanced's assignee, Countrywide.  Accordingly, Count III is dismissed without prejudice as to Countrywide, and Count IV is dismissed with prejudice as to Countrywide.  However, inasmuch as the court has concluded that plaintiff has alleged a plausible claim of unconscionable conduct against Advanced in Count V, plaintiff has also asserted a plausible claim of unconscionable conduct against Countrywide as assignee of the loan.  General principles of West Virginia assignment law support the conclusion that Countrywide stepped into the shoes of Advanced, thereby acquiring Advanced's interest, subject to all claims and defenses existing at the time of the assignment.  See, e.g., Lightner v. Lightner, 146 W. Va. 1024, 1034, 124 S.E.2d 355, 362 (1962) (recognizing that assignee normally "takes subject to all the

defenses and all the equities which could have been set up against the instrument in the hands of the assignor at the time of the assignment"). Consistent with this principle, several courts in this district have recognized that a mortgage holder may be liable for the common law and statutory violations of the original lender. See, e.g., Short v. Wells Fargo Bank Minn., N.A., 401 F. Supp. 2d 549 (S.D. W. Va. 2005); England v. MG Investments, Inc., 93 F. Supp. 2d 718 (S.D. W. Va. 2000); Hays v. Bankers Trust Co., 46 F. Supp. 2d 490 (S.D. W. Va. 1999). Accordingly, to the extent it seeks dismissal of Count VI, Countrywide's motion for judgment on the pleadings is denied.

## IV.

Based on the foregoing analysis, it is ORDERED as follows:

    1) Advanced's motion for judgment on the pleadings be, and it hereby is, granted in part and denied in part, as set forth herein;

    2) Countrywide's motion for judgment on the pleadings be, and it hereby is, granted in part and denied in part, as set forth herein;

    3) Count III be, and it hereby is, dismissed without prejudice;

4) Count IV be, and it hereby is, dismissed with prejudice;

5) Count III as incorporated through Count VI as to Countrywide be, and it hereby is, dismissed without prejudice; and

6) Count IV as incorporated through Count VI as to Countrywide be, and it hereby is, dismissed with prejudice.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: November 15, 2010

_____
John T. Copenhaver, Jr.
United States District Judge